**In the Matter of James M. SOULS.**

**No. 95–600 M.P.**

Supreme Court of Rhode Island.

Jan. 18, 1996.

David Curtin, Providence, for Petitioner.

Peter DiBiase, Providence, for Respondent.

**OPINION**

PER CURIAM.

This matter came on for hearing before the Supreme Court at its conference on December 14, 1995, pursuant to a petition to revoke the license to practice law of the respondent, James M. Souls. The petition was filed in accordance with Article III, Disciplinary Procedure for Attorneys, Rule 24, of the Supreme Court Rules, which provides, in pertinent part:

"An attorney admitted to practice in this State who is convicted in a court of record of a crime which is punishable by imprisonment for more than one (1) year in this or any other jurisdiction may * * * be ordered to appear before the court to show cause why his or her admission to the bar should not be revoked or suspended."

On September 14, 1995, respondent was found guilty after entry of a plea of nolo contendere to one count of leaving the scene of an accident resulting in death in violation of G.L.1956 (1994 Reenactment) § 31–26–1. That statute requires the driver of any vehicle who knowingly becomes involved in an accident resulting in injury to or death of any person to stop immediately at the scene, to

render reasonable assistance, and to give notice of the accident by the quickest means of communication to a nearby office of local or state police. The respondent was sentenced to a term of imprisonment of five years.

The factual basis of respondent's plea is as follows. At approximately 8 p.m. on the evening of March 17, 1995, respondent was operating a motor vehicle, heading in a westerly direction, on Middle Road in East Greenwich, Rhode Island. It was dark, and a light rain was falling. Middle Road is a two-lane highway, well traveled, and at the time of the accident had no adjoining sidewalks. Timothy Lyons (Lyons), a fifteen-year-old resident of East Greenwich, was walking in a westerly direction on Middle Road at the time in question. He was dressed in dark clothing and apparently walking within the lane of travel. The respondent's vehicle came into collision with Lyons, causing fatal injuries. There is no indication of any conduct of respondent prior to the accident to support a finding that he was impaired. The respondent does acknowledge the consumption of "three or four beers" in the hours prior to the collision with Lyons.

It is respondent's postcollision conduct that transformed this incident from a tragic accident to a serious felony. The evidence demonstrates that respondent's vehicle was very heavily damaged by the collision with Lyons, including massive damage to the passenger-side windshield of respondent's vehicle. The respondent acknowledges that although he stopped his vehicle immediately after the accident, he did not leave his vehicle to ascertain the cause of the accident or to conduct a diligent search for a possible victim. It is apparent that respondent knew he had hit something. He later stated to police that he thought he may have hit a deer. He then proceeded to drive his now heavily damaged vehicle home, traveling a distance of approximately thirteen and one half miles from the scene of the accident.

Even though he did not comply with the statutorily required mandates, respondent was clearly concerned about what he may have hit. The following morning, at approximately 6 a.m., he contacted his attorney about the incident the previous evening and asked his attorney to make inquiries of the police regarding possible accidents. Upon inquiring, respondent's attorney was informed that as of that time no accidents had been reported the prior evening. This information was relayed to respondent.

Apparently this information did not allay respondent's concerns about what may have occurred the prior evening. He telephoned a friend, and together they proceeded by automobile to Middle Road to survey the accident scene. Lyons's body was observed lying by the side of the road by respondent's friend. They returned to respondent's home, where respondent called his attorney, related what he had discovered, and requested that his attorney notify the police concerning the whereabouts of Lyons's body. The respondent's attorney did so. In the interim, at approximately 7 a.m. on March 18, 1995, a passing motorist observed the body off to the side of the road and notified the police, who responded to the scene. The respondent voluntarily surrendered himself to the police at approximately 9 a.m. on the morning of March 18, 1995.

Rule 8.4(b) of the Rules of Professional Conduct of the Supreme Court provides, "It is professional misconduct for a lawyer to * * * commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." Although it is axiomatic that every lawyer must act in conformance with the criminal laws of this state, not every instance of criminal conduct will automatically result in professional discipline. As the comments to Rule 8.4 make clear, a lawyer "should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice."

 We believe the facts of the present case support a conclusion that the respondent's conduct falls within the ambit of Rule 8.4(b). The circumstances support a reasonable inference that the respondent knew he had been involved in a collision wherein he was required to stop, to conduct a diligent search for a possible victim, and to render reasonable aid. The respondent left the

scene without a diligent search (although there is no indication that the victim survived the collision). We believe such conduct warrants professional discipline and the imposition of the most serious of sanctions.

Accordingly the respondent, James M. Souls, is hereby disbarred from the practice of law effective September 14, 1995. He may apply for readmission after five years from the date of his conviction.